# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

STEVE MAPP,

    Plaintiff,

v.

WARDEN DOUG WILLIAMS; and MRS. YARBROUGH,

    Defendants.

CIVIL ACTION NO.: 5:16-cv-56

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Presently before the Court is Defendants' Motion for Summary Judgment, (doc. 23), to which Plaintiff filed a Response, (docs. 25, 26.) For the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendants' Motion, **DISMISS** Plaintiff's Amended Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND

In his Amended Complaint[1], Plaintiff contends he fell in the shower on September 1, 2015, while he was incarcerated at Smith State Prison, and he reported this to medical staff two days later. (Doc. 8, p. 3.) Plaintiff claims that Dr. Jefferson x-rayed his hip, and the x-ray

---

[1] Plaintiff was housed at Ware State Prison at the time he filed his original Complaint, and he set forth allegations concerning the conditions of his confinement at both Ware State and Smith State Prisons. (Doc. 1.) The Court informed Plaintiff his allegations were unrelated and directed him to amend his Complaint. (Doc. 7.) Plaintiff filed an Amended Complaint, (doc. 8), and the Court directed service of Plaintiff's Amended Complaint on Defendants, who were officials at Smith State Prison at the relevant time period, (doc. 12). Smith State Prison is in Glennville, Georgia, which lies in the Statesboro Division of this Court. Thus, while the Court would ordinarily direct the transfer of this case to this Court's Statesboro Division, the Court declines to do so here, given the recommended disposition and in the interest of judicial economy.

revealed that Plaintiff's hip was dislocated. Plaintiff was referred to an orthopedic doctor, who opined Plaintiff would need surgery due to the lack of emergency care he received. Plaintiff maintains he was forced to remain on the top bunk and to use a shower without handicapped-accessible seating or stabilization bars from the date of his fall. (Id.) In fact, Plaintiff maintains he was assigned a top bunk from the date of his injury until he was transferred to Ware State Prison on October 29, 2015. (Doc. 25-1, pp. 2–3.)

According to Plaintiff, he "continuously inquired" of Defendant Yarbrough regarding his concerns over the severity of his injury and the pain associated with that injury, yet she failed to show any concern for his health. (Doc. 8, pp. 4–5.) Plaintiff asserts Defendants Yarbrough and Williams "had actual knowledge" of and the authority to accommodate his lack of mobility and to initiate medical care but failed to do so. (Id. at pp. 3–4.)

In their Motion for Summary Judgment, Defendants aver Plaintiff's deliberate indifference claims fail and that they are entitled to qualified immunity. (Doc. 23-1.) In response, Plaintiff maintains Defendants exhibited deliberate indifference to his medical needs by delaying his treatment and are not entitled to qualified immunity. (Doc. 25.)

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." See Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).

**DISCUSSION**

**I.    Plaintiff's Deliberate Indifference Claims**

Plaintiff's claims against Defendants require analysis and discussion under the Eighth Amendment of the United States Constitution. The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, "not every claim by a prisoner that he has not received

3

adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle v. Gamble, 429 U.S. 97, 105 (1976)). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. In order to prevail on a deliberate indifference claim, a prisoner must: (1) satisfy the objective component by showing a serious medical need; (2) satisfy the subjective component by showing a defendant's deliberate indifference to that need; and (3) show that the injury was caused by the defendant's indifference. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

As to the first, objective component, a medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187). In either situation, the medical need must be "one that, if left unattended, 'poses a substantial risk of serious harm.'" Farrow v. West, 320 F.3d 1235, 1246 (quoting Farmer, 511 U.S. at 834).

Under the second, subjective component, the Eleventh Circuit Court of Appeals has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).[2]

---

[2] Eleventh Circuit case law on whether a claim of deliberate indifference requires "more than *gross* negligence" or "more than *mere* negligence" is contradictory. Compare Goebert, 510 F.3d at 1327, with Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). In Melton, the Eleventh Circuit found "more than mere negligence" to be the appropriate standard. 841 F.3d at 1223 n.2. Even so, at least two Eleventh Circuit unpublished cases post-Melton have continued to use the "gross negligence" standard. See, e.g., Woodyard v. Ala. Dep't of Corr., 2017 WL 2829376 (11th Cir. June 30, 2017); Sifford v. Ford,

"Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). Additionally, a defendant who "delays necessary treatment for non-medical reasons" or "knowingly interfere[s] with a physician's prescribed course of treatment" may exhibit deliberate indifference. Id. (citations omitted). In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the Court considers "the reason for the delay and the nature of the medical need." Farrow, 320 F.3d at 1246 (citing McElligott, 182 F.3d at 1255). When a claim turns on the quality of treatment provided, however, "'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." Melton, 841 F.3d at 1224 (quoting Harris, 941 F.2d at 1505). In other words, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 104. Furthermore, deliberate indifference is not established when an inmate receives medical care, but "may have desired different modes of treatment." Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985).

Plaintiff contends he fell while in the showers at Smith State Prison on September 1, 2015, and reported this fall on September 3, 2015. (Doc. 25-1, p. 2.) Plaintiff states he was provided with a pair of crutches and was placed in administrative segregation. Plaintiff asserts he had an x-ray of his hip a few days later, and Dr. Jefferson discovered Plaintiff dislocated his right hip and referred him to an orthopedist. Plaintiff maintains that, from the date of his injuries until his transfer from Smith State Prison, he was assigned a top bunk, despite his injuries. (Id. at

---

2017 WL 2874517 (11th Cir. July 6, 2017). However, because the Eleventh Circuit explicitly addressed this issue in Melton, this Court will apply the "more than mere negligence" standard.

5

pp. 2–3.)  Plaintiff alleges that an orthopedic doctor told Plaintiff that he would need to have surgery on his hip since he did not receive any emergency care.  Additionally, Plaintiff asserts he continuously asked Defendants about his injury and whether he could have an accommodation for a handicapped-accessible shower and toilet, yet his concerns fell on deaf ears.  (Id. at p. 3.) Plaintiff states he wrote Defendant Williams on two occasions and asked for his help about being assigned a top bunk and about being housed in a place where he could have handicapped-accessible facilities, but Defendant Williams did not respond on either occasion.  Plaintiff asserts he wrote numerous letters to Defendant Yarbrough regarding the same concerns, and Defendant Yarbrough responded to five (5) of his correspondences.  Plaintiff states Defendant Yarbrough told him to be patient, but she failed to address the top bunk profile.  (Id. at p. 4.)  Plaintiff avers there are material, factual disputes as to his and Defendants' version of events, and, as a result, Defendants are not entitled to summary judgment.[3]  (Id. at p. 6.)  Specifically, Plaintiff maintains the "fact[s]" that he had to have hip replacement surgery and had to suffer excruciating pain without showering from September 3 through October 29, 2015, due to Defendants ignoring his cries for help and failing to get him the emergency care he needed reveal that Defendants were deliberately indifferent to his serious medical needs.  (Id. at p. 7.)

Defendant Yarbrough became the Health Services Administrator at Smith State Prison on July 27, 2015.  (Doc. 23-3, p. 1.)  In this capacity, Defendant Yarbrough declares she does not provide hands-on medical care to inmates but is responsible for ensuring inmates receive constitutionally adequate medical care.  Defendant Yarbrough also declares that she does not have the authority to determine where inmates are housed or any security measures that might apply to any particular inmate.  (Id. at pp. 1–2.)  Defendant Yarbrough notes, if a medical

---

[3] Plaintiff mentions an affidavit. (Doc. 25-1, p. 6; Doc. 26, p. 2.) However, the Court was unable to locate any affidavit from Plaintiff.

6

practitioner with the Georgia Department of Corrections ("GDC") determines an inmate needs more specialized care than is available at a prison, the medical care provider will put in a consult request for a particular service with the Utilization Management Department. If the Utilization Management Department approves the request, it will schedule the time, place, and manner of the services and will contract with a physician to provide the specialized services. Defendant Yarbrough asserts the GDC contracts with orthopedists because it does not employ "in-house" surgeons to perform orthopedic procedures. (Id. at p. 2.)

Defendant Yarbrough states Plaintiff wrote her on three (3) occasions and filed a grievance regarding his medical care and treatment for his hip. Each time, Defendant Yarbrough asserts she reviewed Plaintiff's medical records, was satisfied that he was receiving appropriate medical care for his hip, and responded to Plaintiff. (Doc. 23-1, p. 13.) Defendant Yarbrough asserts Plaintiff may disagree with the medical care he received for his hip while he was housed at Smith State Prison, but such disagreement does not rise to the level of deliberate indifference. (Id. at p. 14.) Additionally, Defendant Yarbrough alleges Plaintiff made no complaints about his assignment to a top bunk at all or the restroom and shower facilities in his dormitory until he filed a grievance on October 15, 2015, and a letter to her two (2) weeks before Plaintiff was transferred to another facility. (Doc. 23-3, pp. 5, 6.) In response to the letter, Defendant Yarbrough avers she informed Plaintiff that prison officials would request a transfer if his health care needs could not be met at Smith State and that she asked Dr. Aleta Gardner to review Plaintiff's records for a transfer to a facility with handicapped-accessible facilities. (Id. at pp. 6–7.)

Defendant Williams declares no administrative segregation dormitories at Smith State had showers or toilets with support rails on the walls because "inmates would tear the rails off

. . . and use them as weapons." (Doc. 23-5, p. 4.) In September and October 2015, Defendant Williams contends only the L dormitory, a general population dormitory, had a seat that pulled down from the wall in the shower but had no support rails on the walls.[4] Defendant Williams avers he did not receive any letters from Plaintiff in which he complained about his medical care, his assignment to a top bunk, or the lack of access to a handicapped restroom and shower, nor did he receive any verbal information relating to Plaintiff's complaints. (Id. at p. 5.) Defendant Williams maintains he did not learn of Plaintiff's grievance—in which he complained about his medical treatment for his hip and the inadequate shower and restroom facilities—until after Plaintiff was transferred from Smith State on October 29, 2015. (Id.)

It does not appear Defendants dispute that Plaintiff suffered from a serious medical need. Thus, the Court's focus will be on whether a reasonable jury could conclude Defendants' response to Plaintiff's serious medical needs amounts to deliberate indifference. The undisputed evidence of record, including Plaintiff's medical records and deposition transcript and correspondences he wrote, reveals the following about Plaintiff's hip injury and treatment thereafter, his bunk assignment, and his complaints about not having access to handicapped restroom and shower facilities.

Plaintiff fell in the showers at Smith State Prison on September 1, 2015, and he reported to medical on September 3, 2015, that he suffered injury to his right hip, which was classified as

---

[4] According to Defendant Williams, upon Plaintiff's arrival at Smith State Prison on June 30, 2015, through July 20, 2015, Plaintiff was housed in an administrative segregation dorm and had a bottom bunk assignment. (Doc. 23-5, p. 2.) Plaintiff then was transferred to two different general population dormitories within Smith State Prison and had bottom bunk assignments. Defendant Williams also states Plaintiff was moved to administrative segregation for non-disciplinary purposes on September 3, 2015, and was given a top bunk assignment, where he remained until he was transferred to another facility on a routine warden-to-warden "swap". (Id. at p. 3.) Defendant Williams declares Plaintiff was included in the list of names of inmates who were eligible for a swap in October 2015 because he did not want to be housed in the general population at Smith State but would be willing to be housed in a general population dormitory at Ware State Prison. (Id. at p. 4.)

8

an urgent/emergent encounter. (Doc. 23-4, p. 3.) Dr. Roy Jefferson noted Plaintiff had surgical hardware placed in his right leg in 2010. After examination, Dr. Jefferson ordered Plaintiff undergo an x-ray of his right hip and right knee. Dr. Jefferson also ordered that Plaintiff have two crutches, a bottom bunk, no prolonged standing or walking for thirty days, and Motrin as needed for pain. Plaintiff was to be seen again in two weeks and was on the "problem list" to be "reviewed and updated as clinically indicated[.]" (Id.) Plaintiff complained of pain in his right hip and knee on September 9, 2015. Nurse Hower noted Plaintiff was given 800 milligrams of ibuprofen, and she also noted Plaintiff had an x-ray with results pending. (Id. at p. 4.) On September 17, 2015, Plaintiff was seen for review of his x-rays, which revealed a right hip dislocation and a fracture of an orthopedic wire in his right knee. Dr. Jefferson called for an urgent orthopedic consultation, and Plaintiff was to return to the prison's medical department after he was seen by an orthopedist.[5] (Id. at pp. 5, 9.) On this same date, Vicki Jones entered the request for an urgent consult with an orthopedic for a fracture of an orthopedic wire in Plaintiff's right knee and right hip dislocation. (Id. at pp. 7, 9.) The Utilization Management Department approved the consult request on September 17, 2015, (id.), and Plaintiff was to be seen by Mark Winchell on September 29, 2015. (Id. at p. 8.) Dr. Winchell recommended Plaintiff have a CT scan of his right hip and be referred to a hip specialist. (Id.)

Plaintiff was seen once again in medical on October 1, 2015, at which time he agreed with the recommendation that he have a CT scan and a follow-up appointment with a hip specialist. (Id. at pp. 10–11.) Dr. Aleta Gardner requested a digital CT scan of the right hip for Plaintiff on this same date and noted Plaintiff would need to see an orthopedic hip specialist once the CT scan was completed. (Id. at pp. 11, 13.) The CT scan was approved on October 8, 2015.

---

[5] Dr. Jefferson ordered therapeutic measures to be taken on September 17, 2015, but his instructions are illegible. (Doc. 23-4, p. 6.)

9

(Id. at p. 14.)  Plaintiff underwent this scan at Augusta State Medical Prison on October 27, 2015, and Dr. Thomas Pulling read the results of the scan on October 29, 2015, the date Plaintiff was transferred from Smith State.  (Id. at pp. 11, 34–35, 36.)  A progress note from Ware State Prison dated November 19, 2015, indicates the CT scan revealed Plaintiff had a complex fracture or dislocation of the right hip, consistent with a "chronic process."  (Id. at p. 36.)  The physician's assistant noted she would put in an urgent consult request so that Plaintiff could see the hip specialist prior to his December 2015 appointment.  (Id. & at p. 17.)

Plaintiff wrote a letter to Defendant Yarbrough dated September 29, 2015.  Plaintiff expressed his concern that he had been waiting for thirty (30) days since his injury occurred "not getting no [sic] medical attention[.]  I suppose [sic] to been getting the properly [sic] medical treatment[.]"  (Id. at p. 1.)  Plaintiff stated the doctor he saw on September 29, 2015, told Plaintiff that, because his hip had been out of place for so long, the doctor could not put it back in place and would have to send Plaintiff to another doctor for surgery.  Plaintiff also stated all he had received at Smith State Prison was Motrin, but the pills did not help with his pain.  Additionally, Plaintiff stated he did not feel like "the doctors" were taking his situation seriously enough and that he wanted his "process speeded up" so he could walk again.  (Id.)  Defendant Yarbrough responded on October 6, 2015, that the doctor's report of September 29, 2015, revealed possible chronic hip dislocation and that he requested a digital CT scan (and which already had been requested).  Defendant Yarbrough noted Plaintiff saw Dr. Gardner on October 1, 2015, and she explained this process to him.  Defendant Yarbrough advised Plaintiff to put in a sick call request if his pain continued.  (Id. at p. 18.)

On October 2, 2015, Plaintiff submitted an inmate request and expressed concern whether his hip and leg could become stuck in their then-current positions because it had been a month

since his injury, and no one attempted to put his hip back into place. (Id. at p. 2.) Plaintiff also stated he felt his situation was not being taken seriously enough because he was waiting on an appointment with an "outside doctor", which was making his hip worse. (Id.) Defendant Yarbrough responded on October 16, 2015, and informed Plaintiff he needed to have a CT scan, which had been scheduled. Defendant Yarbrough told Plaintiff he had a follow-up appointment with orthopedics after the results of the scan were received, which was within thirty (30) days. In addition, Defendant Yarbrough told Plaintiff a doctor would decide the next move and asked Plaintiff to be patient, as he would "get needed treatment[.]" (Id.)

Plaintiff filed Grievance Number 206209 on October 15, 2015. In his grievance, Plaintiff asserted he had a dislocated hip and required surgery because staff at Smith State "failed to send [him] to the [orthopedic] on time." (Id. at p. 24.) Plaintiff alleged he was in the H-1 dormitory without a handicapped-accessible shower and was "suffering excruciating pain lacking the medical attention [he] need[ed]." (Id.) Defendant Yarbrough issued a witness statement in response to Plaintiff's grievance complaints and summarized her review of Plaintiff's medical records. Of particular note, Defendant Yarbrough stated Plaintiff had a follow-up visit scheduled with the orthopedist for November, that the CT scan was scheduled for the week following October 23, 2015, and that she had requested Dr. Gardner review Plaintiff's medical records for a transfer to a facility with handicapped-accessible areas. (Id. at p. 22.) The Warden's response to Plaintiff's grievance, which echoed Defendant Yarbrough's witness statement, is dated December 16, 2015. (Id. at p. 26.)

Plaintiff wrote Defendant Yarbrough again on October 16, 2015. Plaintiff recounted events which occurred since his fall on September 1, 2015. While Plaintiff noted Defendant Yarbrough had already told him about the CT scan, he was still waiting for that scan. Plaintiff

11

reiterated his belief that people in Smith State's medical department were not doing their jobs because, if they had been, his hip would have already been put back in place. (Id. at p. 33.) Defendant Yarbrough responded to Plaintiff's letter and stated once again his CT scan had been scheduled and that he would be seen by a doctor after this scan. Defendant Yarbrough reminded Plaintiff to put in a sick call request for pain and advised Plaintiff that a transfer would be requested if his health needs could not be met at Smith State. (Id.)

Defendant Yarbrough was undoubtedly aware of Plaintiff's hip injury as early as the end of September or the beginning of October 2015, (id. at pp. 1, 18), and was aware of Plaintiff's concerns over the lack of handicapped-accessible showers as of the latter part of October 2015, (id. at p. 22). However, Plaintiff fails to create a genuine dispute at to any fact material to his deliberate indifference claim against Defendant Yarbrough. At best, Plaintiff shows a difference of opinion as to a course of treatment. Nonetheless, a difference of opinion as to a course of treatment does not amount to an Eighth Amendment violation. Jones v. Fogam, No. CV413-131, 2014 WL 545404, at *2 (S.D. Ga. Feb. 12, 2014) (noting a mere difference of opinion regarding preferred course of treatment is not an Eighth Amendment violation; rather, a plaintiff must show he has a serious medical need and that defendant's response was "poor enough to constitute an unnecessary and wanton infliction of pain or risk of serious damage to future health.") (quoting Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011), and Roe v. Elyea, 631 F.3d 843, 858 (7th Cir. 2011)).

Even when viewing all of the evidence in favor of Plaintiff, no rational juror could find in his favor on his claim that Defendants were deliberately indifferent to his serious medical needs. In fact, from the time Plaintiff first complained to staff at Smith State Prison of his injuries on September 3, 2015, relating to a fall in the shower on September 1, 2015, Plaintiff was seen in

medical no fewer than four (4) times. Additionally, Plaintiff had appointments with an orthopedist and had x-rays and a CT scan. All of these events occurred over the course of less than two months' time. Even if this relatively short period of time was not a quick enough response in Plaintiff's estimation, as noted above, his difference of opinion as to his treatment does not amount to deliberate indifference. Furthermore, to the extent that Plaintiff contends Yarborough should have ordered different tests and sent Plaintiff to receive different treatments, such contentions are inadequate bases for a deliberate indifference claim. Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (reversing district court denial of summary judgment because "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (citing Estelle, 429 U.S. at 107); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (A "simple difference in medical opinion" does not give rise to a constitutional violation.). Additionally, Defendant Yarbrough was entitled to rely upon the medical specialists who were evaluating and treating Plaintiff and their recommendations that Plaintiff receive follow-up testing rather than immediate surgery.

Additionally, once Defendant Yarbrough became aware that Plaintiff did not have access to handicapped showers, she made an effort to have Plaintiff transferred to a facility that did have these accommodations.[6] What is more, Plaintiff fails to create a genuine dispute as to whether Defendant Yarbrough had the authority in her position as Health Services Administrator to do more than she did. A plaintiff must demonstrate that a defendant's responses to his

---

[6] The Court notes Plaintiff's assertion that he did not have access to handicapped-accessible facilities upon his arrival at Ware State Prison. (Doc. 23-4, p. 31.) However, this is of no moment as to whether the named Defendants were deliberately indifferent to Plaintiff's serious medical needs while he was housed at Smith State.

medical needs were poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in treatment, or even medical malpractice actionable under state law. Gipson v. Renninger, No. 3:15-CV-827-J-39PDB, 2017 WL 4124759, at *10 (M.D. Fla. Sept. 18, 2017) (citing Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000)). Plaintiff has failed to do so. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Moreover, as the party opposing summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Id.

Further, there is no genuine dispute of material fact that Plaintiff failed to make Defendant Yarbrough or any other medical personnel aware of his assignment to a top bunk. Additionally, there is no dispute that Defendant Williams was not made aware of Plaintiff's medical needs or complaints while Plaintiff was housed at Smith State Prison. The Court notes Plaintiff's contention that he wrote Defendant Williams twice and verbally advised him of his medical problems. However, summary judgment is the time to "put up or shut up" rather than resting on bare allegations. Wilson v. White, No. CV512-130, 2014 WL 3925293, at *4 (S.D. Ga. Aug. 11, 2014) (quoting Purser v. Donald, No. CV605–33, 2006 WL 2850428, at *4 (S.D. Ga. Sept. 28, 2006) (when confronted by a summary judgment record developed under Federal Rule of Civil Procedure 56, the plaintiff is required to "put up or shut up" on his evidence, rather than rely on bare allegations)). There is no evidence—only Plaintiff's unsupported allegations—

that Defendant Williams was aware of Plaintiff's concerns and medical needs while Plaintiff was still housed at Smith State Prison.

To the extent Defendant Williams responded to Plaintiff's grievance, his response was dated several weeks after Plaintiff's transfer to another facility. Moreover, Defendant Williams cannot be held liable based on his participation in the grievance process alone. Knop v. Warden, No. CIV.A. 14-10185, 2015 WL 1132652, at *3 (E.D. Mich. Feb. 4, 2015) ("[M]ere participation in the grievance process, including signing a grievance response, is insufficient to show personal involvement. Rather, liability under § 1983 must be based upon active unconstitutional behavior, not a 'mere failure to act.'") (quoting Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999), and Lee v. Mich. Parole Bd., 104 F. App'x 490, 493 (6th Cir. 2004)), *report and recommendation adopted*, No. 14-10185, 2015 WL 1132696 (E.D. Mich. Mar. 11, 2015).

In addition, Plaintiff fails to create a genuine dispute as to Defendants' authority to provide hands-on treatment in their positions as the Warden and the Health Services Administrator. The undisputed evidence establishes that Defendant Yarbrough merely reviewed Plaintiff's medical records to respond to his complaints and formal grievance as part of her duties as the Health Services Administrator. (See, e.g., Doc. 23-4.) What is more, Defendant Williams relied on Defendant Yarbrough's review of Plaintiff's medical records in denying Plaintiff's grievance. Thus, Plaintiff fails to show that, in these capacities, Defendants were personally liable for his medical care and treatment. Williams v. Limestone Cty., 198 F. App'x 893, 897 (11th Cir. 2006) ("[S]upervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care.") (citations omitted); see also Oaks v. Pane, Civil Action No. 7:11-cv-00041, 2011 WL 4102273, at *1 n.3 (W.D. Va. Sept. 14, 2011) (noting that health services administrator is an administrative position, and the person

holding that position in a prison does not personally treat inmates but must rely on medical professionals to diagnose and treat inmates).

Finally, the Court notes Plaintiff's assertion that a doctor told him that, had Plaintiff come to see him earlier than he did, Plaintiff would not have required surgery to repair his hip. (Doc. 23-7, p. 4.) However, these allegations, even if true, constitute hearsay, which is generally inadmissible during the trial of a case. "The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'" Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (quoting Macuba v. Deboer, 193 F.3d 1316, 1322–23 (11th Cir. 1999)). "Rule[s 56(c) and] 56(e) of the Federal Rules of Civil Procedure requires that 'affidavits' that support or oppose summary judgment motions 'shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence[.]' This rule also applies to testimony given on deposition." Id. (second alteration in original) (quoting Macuba, 193 F.3d at 1322–23, in turn citing Randle v. LaSalle Telecomms., Inc., 876 F.2d 563, 570 n.4 (7th Cir. 1989)). A "nonmoving party, in opposing a motion for summary judgment, need not produce affidavits, but may refer the district court to 'pleadings, depositions, answers to interrogatories, and admissions on file,' as provided by Fed. R. Civ. P. 56(c)." Id. Plaintiff has failed to provide the Court with any acceptable form of evidence Rule 56 allows a party to oppose a summary judgment with to support this assertion or to otherwise create a genuine dispute of material fact.

For all of these reasons, the Court should **GRANT** Defendants' Motion for Summary Judgment and **DISMISS** Plaintiff's Amended Complaint.[7]

---

[7] Given this recommendation, the Court need not delve deeply into Defendants' qualified immunity arguments. Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (unnecessary to address defendants' entitlement to qualified immunity when summary judgment properly granted based on plaintiff's failure to sustain his Eighth Amendment deliberate indifference claim). However, even if the Court were to determine there is a genuine dispute of material fact as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs, Defendants would be entitled to qualified

## II. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or

---

immunity. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002). To determine "whether the law clearly established the relevant conduct as a constitutional violation at the time [the defendants] engaged in the challenged acts," the defendants must have had "fair warning" that their conduct violated a constitutional right. Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017) (citing Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (citations and quotation marks omitted)). In order to demonstrate "fair warning" and defeat qualified immunity, Plaintiff must "point to binding precedent that is materially similar," or show the challenged conduct violated federal law with "obvious clarity" such that "every reasonable government official facing the circumstances would know that the official's conduct" was unlawful. Id. at 852; Gaines v. Wardynski, 871 F.3d 1203, 1209 (11th Cir. 2017) (binding precedent comes from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state") (citation and alteration omitted). The facts presented at summary judgment establish this is not an "obvious clarity" case and further show that Defendants had no "fair warning" that their challenged conduct was unlawful. Plaintiff has not pointed to any binding precedent that would have put Defendants on notice that their lack of hands-on provision of medical care and treatment—in the face of Plaintiff receiving actual and timely medical care and treatment—violated his Eighth Amendment rights. On the contrary, the binding precedent indicates that Defendants did not "violate clearly established" federal law. To be clear, if Defendants had ignored Plaintiff's dislocated hip, failed to ensure Plaintiff was provided with medical treatment or attention to this serious medical need, and ignored Plaintiff's complaints about the lack of handicapped-accessible facilities, that conduct would have violated clearly established precedent. However, binding precedent would not have provided fair warning to reasonable persons in Defendants' positions that Plaintiff's Eighth Amendment rights were being violated. The Court is not aware of, and Plaintiff has not cited, any binding precedent that would have provided Defendants with "fair warning" that their actions violated Plaintiff's Eighth Amendment rights.

17

argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action and Defendants' Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment and **DISMISS** Plaintiff's Amended Complaint. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 14th day of February, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA